UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MICHAEL PITTMAN,**<br><br>    **Defendant.** | Case No. 24-cr-00296 (TSC) |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

For more than a year, Mr. Pittman trafficked dozens of deadly firearms into our community. Mr. Pittman had other opportunities. He is a high school graduate who had maintained gainful employment. Despite that, Mr. Pittman chose as a career to purchase illegal guns, transport them to our community, and sell them to individuals he knew could not possess them.  Each of the dozens of guns that Mr. Pittman trafficked is a deadly weapon. And he trafficked more than 200 of them. By introducing these guns on our streets, he made our community more dangerous. Notably, he engaged in this behavior while he had pending criminal charges and then was on supervised probation.   Mr. Pittman's egregious and extensive trafficking necessitates a significant term of incarceration.

For the following reasons, the Government requests a sentence of 108 months' incarceration, followed by three years of supervised release.

## BACKGROUND

From at least April 2023 through May 2024, Michael Pittman agreed with others to illegally obtain and distribute firearms in and around Washington, D.C. During that period, Mr. Pittman would rent cars either in his or other names from car rental agencies in and around Washington,

D.C. Pittman would then drive to Georgia and North Carolina where he would purchase firearms from illegal firearm suppliers. After obtaining these firearms, Pittman would return to the Washington, D.C. area and sell the firearms, advertising them through different means.

For example, Mr. Pittman would take photographs of the firearms he was offering for sale displayed on his bed with prices and message these photographs to interested individuals.



When the firearms were sold, Mr. Pittman would cross out the sold firearms and re-send the image to others.



When he sold the firearms, Pittman was aware that at least some of the individuals to whom he was selling the firearms had felony convictions. Indeed, as of April 29, 2024, Mr. Pittman himself had been convicted of a felony in Price George's County, Maryland case number C-16-CR-23-000831 and was sentenced to a sentence of two years' incarceration suspended as to all but thirty days.

On May 30, 2024, Pittman was arrested as he was returning from a trip to obtain illegal firearms for the purpose of distributing them. Mr. Pittman fled from a traffic stop before crashing his vehicle and running into the nearby woods. Pittman was arrested with a backpack containing sixteen firearms, an additional firearm he had dropped, and two firearms he had left in his vehicle.



Pittman intended to sell these firearms in Maryland and Washington, D.C. to various individuals, knowing that it would likely be a felony for some of those individuals to obtain a firearm.

Law enforcement subsequently obtained a warrant and searched Pittman's residence. In Pittman's residence, law enforcement recovered hundreds of rounds of ammunition, firearm cleaning and repair tools, firearm magazines, other firearm accessories, and three additional firearms. Law enforcement also observed the same red-and-black patterned bed spread observed in the images from Pittman's phone.

Between April 2023 through May 2024, Pittman obtained, advertised, and/or sold 200 or more firearms including various models of Smith & Wesson, Glock, Springfield, Taurus, Canik, and Walther firearms to individuals knowing or having reason to believe that it would likely be a felony for some of those individuals to obtain a firearm.

*<u>Prior Law Enforcement Encounters</u>*

In addition to the offense to which he pled guilty, Mr. Pittman was stopped previously as he trafficked firearms. On November 28, 2023, Mr. Pittman fled law enforcement in Spartanburg, South Carolina. When he was ultimately stopped, law enforcement recovered a significant amount of cash, bullets, a firearm magazine, and located a firearm in Mr. Pittman's flight path that was stolen in Georgia.

*<u>The Pre-Sentence Investigation Report</u>*

The Pre-Sentence Investigation Report (PSIR) summarizes Mr. Pittman's history. Mr. Pittman is thirty and was born and raised in Montgomery County, Maryland. PSIR at ¶ 49. Following his parent's divorce, Mr. Pittman was raised and supported by his mother. PSIR at ¶ 51. Mr. Pittman reported that he was provided with all necessities. *Id.* Mr. Pittman has reported suffering from mental health issues. PSIR at ¶¶ 62-64. Mr. Pittman graduated from high school and obtained certifications in CPR and First Aid. PSIR at ¶ 68. Mr. Pittman was previously employed as a barback, valet driver, warehouse worker, and a cashier. PSIR at ¶¶ 72-75.

Mr. Pittman has one prior conviction for Second Degree Assault in Prince George's County, Maryland. PSIR at ¶ 39.

## ARGUMENT

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v.*

*United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

(i) issued by the Sentencing Commission . . .; and

(ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission . . . and

(B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## THE APPLICABLE SENTENCING GUIDELINES

The PSIR estimates Mr. Pittman's offense level to be 31 and his criminal history to be Category I, yielding a Guidelines imprisonment range of 108 to 135 months of imprisonment. PSIR at ¶ 83. The PSIR also indicates that a Guidelines range fine would be between $30,000 and $250,000, and a Guidelines range for supervised release is one to three years. PSIR at ¶ 91. The Government agrees with these calculations.

**THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The Government requests that the Court impose a sentence of 108 months' incarceration followed by three years of supervised release. This sentence reflects the serious and continuous nature of Mr. Pittman's conduct, the significant danger he injected into our community by bringing dozens of illegal guns to our streets, and signals that the trafficking of illegal firearms is not a lucrative or rewarding profession.

**I.      The Nature and Circumstances of Mr. Light's Offenses.**

For more than a year, Mr. Pittman had a job: illegally trafficking firearms around the Washington, D.C. area. Mr. Pittman would drive to certain southern states, purchase firearms, drive them back to the D.C. area and then sell them. He knew that the people he was selling these firearms could not possess those firearms because they had criminal charges or convictions. Mr. Pittman did not care.

It has been clear for decades that the greater number of guns in a community, the more violence.[1] And there are dozens of guns on our streets because of Mr. Pittman. Every one of these guns represents the potential for fear and death to members of our community. With his choices, Mr. Pittman has directly made our community less safe. And he sold these killing weapons not out of any need for personal defense. He engaged in this conduct for profit.

The length and breadth of Mr. Pittman's illegal firearm trafficking is shocking. He made trip after trip, driving hundreds of miles in each direction, fully aware of what he was doing. For

---

[1] *See, e.g.*, Daniel Semenza, *More Guns, More Death: The Fundamental Fact that Supports a Comprehensive Approach to Reducing Gun Violence in America*, Rockefeller Institute of Government (June 21, 2022), available at https://rockinst.org/blog/more-guns-more-death-the-fundamental-fact-that-supports-a-comprehensive-approach-to-reducing-gun-violence-in-america/#_edn1; Mark Duggan, *More Guns, More Crime*, University of Chicago Press Journals, available at https://www.journals.uchicago.edu/doi/10.1086/322833.

at least thirteen months, he apparently never questioned his decisions or paused to give his illegal conduct a second thought.

Mr. Pittman's conduct was egregious, extensive, has made our community more dangerous, and merits a significant term of incarceration.

**II.     Mr. Pittman's History and Characteristics.**

Mr. Pittman has a prior conviction for Second Degree Assault.  Notably, it appears to relate to a traffic stop during which Mr. Pittman assaulted a law enforcement officer. His repeated dangerous encounters with law enforcement—including at least two where he fled at high speeds—posing a threat to everyone on the roadways is concerning.

Further, absent from Mr. Pittman's personal history, is the exposure to violence or financial insecurity that that defendants before this Court sometimes experience. While his parents divorced at a young age, Mr. Pittman was raised by an apparently loving mother who attended to his needs. Mr. Pittman graduated high school and has demonstrated that he has the ability to obtain gainful employment. But Mr. Pittman chose a different path. Instead of maintaining lawful employment, he chose to serve as an illegal firearm trafficker, profiting from the violence of others.

Mr. Pittman's history and characteristics do not mitigate his conduct.

**III.    The Need for the Sentence Imposed.**

The requested sentence meets the goals of sentencing. The sentence provides specific deterrence: it will keep our community safe from Mr. Pittman for a significant period of time.  It provides general deterrence: it will signal to the community that trafficking in firearms is not a lucrative business and deter others from doing so. And it provides an opportunity for Mr. Pittman to reflect on the serious and repetitive nature of his crimes, as well as obtain needed mental health counseling.

Mr. Pittman trafficked dozens of guns in our community. Each of those guns represented the potential for fear if not death. The breadth and length of his conduct indicates the need for deterrence. Mr. Pittman never once questioned his decisions despite almost being caught in the act once. This is particularly galling as he was facing criminal charges and then on supervised probation during the pendency of his criminal enterprise. His extensive criminal conduct reflects the need for significant deterrence.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 108 months' incarceration, followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ Cameron A. Tepfer*
Cameron A. Tepfer
N.Y. Attorney No. 5248208
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov